IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FARMLAND INDUSTRIES, INC., et al., | ) | Case No. 02-50557 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| COFFEYVILLE RESOURCES, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 05-4029 |
| | ) | |
| GAF HOLDINGS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on motions to dismiss filed by Defendants John P. Raynor ("Raynor"), Coleman R. Ferguson ("Ferguson"), Pete Gotcher ("Gotcher"), and GAF Holdings, LLC ("GAF"). Raynor's motion seeks a dismissal on grounds that the Court lacks subject matter jurisdiction in this matter because it is not yet ripe for adjudication.[1] GAF's motion contends that the Court lacks jurisdiction because this matter is not sufficiently related to the underlying bankruptcy proceeding. Ferguson's and Gotcher's motions simply incorporate by reference the arguments advanced in Raynor's and GAF's motions. The Plaintiff, Coffeyville Resources, LLC ("CRLLC") maintains that the matter is ripe and the Bankruptcy Court has inherent and statutory jurisdiction in this matter.

Upon review of the pleadings and relevant law, the Court will dismiss this adversary proceeding.

---

[1] Although Raynor failed to identify either a statutory or precedential basis for the dismissal motion, one direct reference to ripeness was buried in his lengthy (and unnecessary) dissertation on the merits of the action. The Court, as well as the Plaintiff in its response, interpret Raynor's motion as one under Fed. R. Civ. P. 12(b)(1) (applicable to bankruptcy proceedings under Fed. R. Bank. P. 7012) challenging the Court's jurisdiction.

## I. STANDARD OF REVIEW

Under Rule 12(b)(1), a defendant may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments.[2] The Court interprets the Defendants' motions as facial challenges to jurisdiction. In a facial challenge to jurisdiction, the Court reviews only the pleadings, presumes that all of the factual allegations concerning jurisdiction in the complaint are true, and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction.[3]

## III. BACKGROUND

The following facts culled from the Plaintiff's complaint are presumed to be true:

1. On May 31, 2002, the Debtors[4] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. On September 25, 2003, the Debtors and CRLLC entered into an asset sale and purchase agreement ("Agreement") in which CRLLC agreed to purchase all of the assets associated with the operations of the Debtors' petroleum refinery and fertilizer complex in Coffeyville, Kansas ("Coffeyville Assets"). On the same day, the Debtors filed a motion seeking Court approval to sell the Coffeyville Assets to CRLLC ("Sale Motion").

3. On October 7, 2003, the Court held a hearing on bidding procedures under the Sale Motion, and on October 10, 2003, the Court entered an order ("Sale Procedures Order") (1) approving the auction and bid procedures for the sale of the Coffeyville Assets; (2) approving a break-up fee; and (3) approving the form and manner of notice.

4. None of the Defendants objected to the proposed sale procedures, and none of them appealed the Sale Procedures Order.

5. The Sale Procedures Order is a final order.

6. On October 28, 2003, Mid-Continent Refinery LLC ("Mid-Continent") (of which Defendant Raynor was a member) filed an emergency motion ("Mid-Continent Motion") to extend the

---

[2] *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).

[3] *Sullivan*, 4 F.3d at 593 (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir.1982)); *Osborn*, 918 F.2d at 729 n. 6.

[4] Farmland Industries, Inc., et al.

      competing bid deadline, continue the auction date, and continue the sale hearing date.

7.    On October 31, 2003, after a hearing, the Court denied the Mid-Continent Motion. In doing so, the Court found, based in part on Raynor's testimony, that Mid-Continent had "ample knowledge" of the potential sale of the Coffeyville Assets to CRLLC.

8.    Thereafter, GAF submitted a bid which the Debtors determined was not "qualified." GAF took no action to contest the Debtors' decision.

9.    The Debtors did not receive any qualified bids, other than Pegasus' (CRLLC's) "stalking-horse" bid, and accordingly, there was no auction.

10.    The Court entered an order ("Sale Order") on November 14, 2003, authorizing, *inter alia*, the sale of the Coffeyville Assets to CRLLC.

11.    In the Sale Order, the Court found that CRLLC was a good faith purchaser of the Coffeyville Assets.

12.    None of the Defendants objected to the Sale Order, and none of them appealed the Sale Order.

13.    The Sale Order is a final order.

14.    On February 2, 2004, GAF filed a motion, pursuant to Federal Rule of Civil Procedure 60(b), requesting relief from the Sale Order ("GAF's Rule 60(b) Motion").

15.    In GAF's Rule 60(b) Motion, GAF argued that the Coffeyville Assets should be placed back on the market for potential bidders based on allegations that a member of the Debtors' senior management had a conflict of interest which impermissibly influenced the bidding and price of the Coffeyville Assets.

16.    The Court held a hearing on GAF's Rule 60(b) Motion on February 11, 2004.

17.    At the close of GAF's presentation of evidence at the February 11, 2004 hearing on GAF's Rule 60(b) Motion, the Court denied GAF's motion on the Debtors' motion for judgment as a matter of law.

18.    Thereafter, on February 19, 2004, the Court issued a Memorandum Opinion and Order (the "60(b) Order") memorializing the Court's oral ruling.

19.    Among other things, the Court found that GAF's Rule 60(b) Motion failed because the allegations it raised were based on facts that could have been discovered in the exercise of due diligence before the Court entered the Sale Order.

20.    The Court also found that GAF failed to present clear and convincing evidence that the

      Debtors engaged in fraud, misrepresentation, or other misconduct that impermissibly influenced the auction and bid procedures such that the Court should stay the Sale Order.

21. GAF did not appeal or in any way challenge the 60(b) Order that denied GAF's Rule 60(b) Motion.

22. The 60(b) Order is a Final Order.

23. On March 3, 2004, the Debtors and CRLLC closed the purchase of the Coffeyville Assets.

24. On February 1, 2005, the Defendants threatened CRLLC and others with litigation.

25. In a one-page letter dated February 1, 2005, Raynor, an attorney, wrote that "I have been and still am involved with" GAF's attempted acquisition of the Coffeyville Assets.

26. Raynor's letter continues that "GAF is in the process of finalizing terms to engage a firm to institute proceedings against CRLLC, Pegasus, and others to seek damages for tortious behavior that deprived GAF from acquiring the Coffeyville Assets."

27. Raynor's letter concludes with: "Call if you're interested in exploring settlement before the firm is retained and litigation is commenced. Time is of the essence."

28. On February 3, 2005, Raynor, on behalf of himself, his law firm (Raynor, Rensch & Pfeiffer) and GAF, informed CRLLC by letter that the Defendants' causes of action would be based on allegations of intentional interference with contract or prospective contractual relations and civil conspiracy.

29. Raynor told CRLLC 's counsel by telephone that GAF would commence a law suit in state court against CRLLC.

30. At the time CRLLC filed its petition, it was in the process of preparing an S-1 registration statement for a potential public stock offering.[5]

31. In connection with such issuance, CRLLC prepared disclosures to comply with its disclosure obligations.

32. At the time CRLLC filed its petition and argued for a preliminary injunction, it maintained that the threat of this litigation, which would have to be disclosed by CRLLC, would, at the

---

[5] After filing this adversary, CRLLC filed a S-1 registration on or about February 11, 2005.

very least, delay, if not completely jeopardize, this offering.[6]

33.   Defendants were aware of CRLLC's potential public offering.

## IV. DISCUSSION

In this case, the Plaintiff claims that the Defendants' threats of litigation give rise to a controversy ripe for adjudication under the Declaratory Judgment Act, 28 U.S.C. § 2201, and that the bankruptcy court, in particular, may exercise jurisdiction over this declaratory judgment action based on the bankruptcy court's inherent jurisdiction to interpret its own orders and its jurisdiction over core bankruptcy matters pursuant to 28 U.S.C. § 1334(b).  Because the Court finds that the matter does not present a justiciable case or controversy, it does not need to address the alleged bases for bankruptcy court jurisdiction.

The Declaratory Judgment Act authorizes a federal court to "declare the rights and other legal relations of any interested party" in a "case of actual controversy."  28 U.S.C. § 2201.  An actual controversy is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[7]  In this case, the Plaintiff maintains that the Defendants' threats of litigation create an actual controversy because those threats call into question the validity and effect of the Sale Order, and the Plaintiff suggests several cases in which courts have found that threats of litigation create a justiciable controversy.

The Court is not oblivious to the Plaintiff's pleas and does, indeed, find the Defendants' obvious and unabashed attempt to extract a settlement from the Plaintiff on the eve of a public offering questionable at best.  However, this Court takes a narrower view of what constitutes an

---

[6] Notably, the S-1 registration does not appear to contain a reference to the threatened litigation.  This omission is curious in light of CRLLC's asseverations in its pleadings and at the temporary injunction hearing that such a disclosure was mandatory and one of central reasons why it was entitled to relief in this case.

[7] *Diagnostic Unit Inmate Council v. Films Inc.*, 88 F.3d 651, 652 (8th Cir.1996) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

immediate and real threat than the cases cited by the Plaintiff,[8] especially in light of the extremely broad relief requested – enjoining the Defendants from commencing "any action seeking damages or any other form of relief in any jurisdiction based on claims allegedly arising from CRLLC's purchase of the Coffeyville Assets from the Debtors;"[9] the difficulty in crafting an injunction which would conclusively prevent harassment by the Defendants, inasmuch as they adamantly maintain that their (yet to be filed) claims for damages against non-debtor parties are not barred or affected in any way by the Sale Order; and this Court's belief that a state court is fully capable of protecting the sanctity of the Sale Order and protecting the Plaintiff's rights under that order.[10]

Moreover, the decision to exercise jurisdiction under the Declaratory Judgment Act is within the Court's discretion.[11] Factors considered in determining whether to exercise jurisdiction under the Declaratory Judgment Act include whether the declaratory judgment will serve a useful purpose in clarifying and settling the legal dispute at issue; whether it will afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings;[12] and whether an adequate alternative remedy exists.[13]

All of these factors weigh against the Court's exercise of jurisdiction here. First, the declaratory judgment will not clarify the dispute because, as discussed above, until the Defendants file a lawsuit the Court is not convinced that a discernable dispute exists. Second, it is unlikely that the declaratory judgment in favor of the Plaintiff would afford relief from any uncertainty or insecurity because the Plaintiff's complaint does not ask for a declaration that the specific threats

---

[8] None of which constitutes mandatory precedent.

[9] Emphasis added.

[10] Notwithstanding the Court's ruling at this juncture, if and when the Defendants file a lawsuit, a ripe controversy might exist under the Anti-Injunction Act (28 U.S.C. § 2283), assuming that the lawsuit actually impinges on the validity of the Sale Order. That cannot be known until the lawsuit (if any) is filed.

[11] *Century Indemnity Co. v. McGillacuty's, Inc.*, 820 F.2d 269, 270 (8th Cir.1987) (citing *Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985)).

[12] *Alsager v. Dist. Court of Polk County, Iowa*, 518 F.2d 1160, 1162 (8th Cir. 1975).

[13] *Glover v. State Farm Fire and Cas. Co.*, 984 F.2d 259, 261 (8th Cir. 1993)

or allegations made by the Defendants are in conflict with the Sale Order, and without such a determination, the Defendants are likely to continue to argue that the threatened actions for damages do not impinge on the Sale Order. Third, even if the claims threatened are, in fact, barred by the Sale Order, as stated above, the Plaintiff can adequately defend itself in state (or federal) court.

In sum, the Court dismisses this adversary proceeding on the basis that the Court lacks subject matter jurisdiction because the matter is not yet ripe for adjudication, and on the alternative basis that it is within the Court's sound discretion not to exercise jurisdiction under the circumstances presented.

## V. CONCLUSION

Therefore, for the reasons stated above, the Court will dismiss this adversary proceeding. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 7th day of April 2005.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Geoffrey L. Harrison
David C. Stover
John P. Raynor
Thomas R. Califano
John Watt
Laurence M. Frazen
Coleman Ferguson
Pete Gotcher